UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

|  |  |  |
|---|---|---|
| ANIMACCORD LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22cv868 (LMB/WEF) |
| | ) | |
| THE INDIVIDUALS, PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A" et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment against the following Defendants: (1) Aliyah Mullen d/b/a Arakhaim; (2) Ana Castillo d/b/a creatikacorp; (3) Monica G. Baez d/b/a MonicasInventions; (4) Michael Aaron Pritchard, Joi Lynn Pritchard, and A and J Graphics LLC (a Texas Limited Liability Company), all d/b/a AandJGraphicsLLC; (5) ewatkins67; and (6) Venny A. Dial d/b/a Tutuseveryday (collectively, the "Default Defendants").[1] (Dkt. 102.)  After the Default Defendants failed to respond to Plaintiff's Motion for Default Judgment or appear at a hearing on December 16, 2022, the undersigned U.S. Magistrate Judge took the matter under advisement.[2]  For the reasons stated below, the undersigned now

---

[1] Plaintiff named one other defendant, Elena Rabinovich d/b/a johninternationaldvds, in its Motion; however, on December 13, 2022, Plaintiff and Elena Rabinovich jointly moved for a consent order of dismissal, including withdrawal of the motion for default judgment solely with respect to Elena Rabinovich, which the Court entered.  (Dkt. 111.)

[2] Relevant filings before the Court include the First Amended Complaint (Dkt. 37) ("Am. Compl."); Plaintiff's Request for Clerk's Entry of Default (Dkt. 92) ("Pl.'s Req. Default"); Declaration of Kerry S. Culpepper in Support of Request for Clerk's Entry of Default (Dkt. 93) ("Culpepper Decl."); Plaintiff's Motion for Default Judgment (Dkt. 102) ("Mot. Default J."); Plaintiff's Memorandum of Points and Authorities in Support of Motion for Default Judgment

recommends that Plaintiff's Motion for Default Judgment be granted in part and denied in part.

## I.   **INTRODUCTION**

### A.  **Background, Procedural History and Summary of Recommendations**

Plaintiff Animaccord Ltd. ("Plaintiff") is the owner of all title, rights, and interest in the animated video series, *Masha and the Bear*.  Relevant to this litigation, Plaintiff owns multiple *Masha and the Bear* trademarks and copyrights.  Plaintiff not only produces, promotes and distributes the series, but also sells *Masha and the Bear* merchandise.  Plaintiff discovered, however, that the Default Defendants were also selling *Masha and the Bear* merchandise online using Plaintiff's trademarked and copyrighted material, without Plaintiff's authorization.

On August 2, 2022, Plaintiff filed this lawsuit, alleging that the Default Defendants and other individuals, partnerships, and unincorporated associations listed in Schedule A, attached to the Complaint, were selling and distributing counterfeit goods utilizing Plaintiff's trademarked and copyrighted works through various e-commerce platforms.[3]  Plaintiff's suit brought five causes of action:  (1) trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) dilution of Plaintiff's trademarks in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) unfair competition under Virginia common law, Va. Code Ann. § 59.1-92.15; and (5) copyright infringement under 17 U.S.C. §§ 106 and 501.  (Dkt. 1.)

Upon Plaintiff's motion, on August 17, 2022, the Court granted Plaintiff a temporary restraining order and allowed, among other things, leave for Plaintiff to conduct limited expedited

---

(Dkt. 103) ("Mem. Supp. Default J."), and all attachments and exhibits submitted with those filings.

[3] Plaintiff originally filed suit against 30 defendant "Seller IDs" but moves for default judgment only against these identified as the Default Defendants.

discovery to ascertain the identity and location of defendants. (Dkt. 11.) On September 8 and 9, 2022, Plaintiff filed with the Court two status reports, which confirmed that Plaintiff served subpoenas on Amazon, eBay, Etsy, and Redbubble, and that those e-commerce platforms provided "names and addresses" and "identifications" of Defendants. (Dkts. 14, 19.) On September 20, 2022, Plaintiff filed its Amended Complaint, which brought the same legal claims but identified the defendants by their individual and corporate names. (*See generally* Am. Compl.) Thereafter, Plaintiff effected service of process on each of the Default Defendants, who failed to answer or file any responsive pleading. On November 9, 2022, Plaintiff filed its request for entry of default against the Default Defendants. (Dkt. 92.) On November 14, 2022, the Clerk of Court entered default as to the Default Defendants. (Dkt. 99.) On November 21, 2022, Plaintiff filed the instant Motion for Default Judgement against the Default Defendants and requested statutory damages, permanent injunctive relief, and attorneys' fees and costs. (Dkt. 102; Am. Compl. at Prayer for Relief; Mem. Supp. Default J. at 13-17.) Plaintiff served a copy of the Motion for Default Judgment and a copy of the Court's order setting the hearing of that Motion upon the Default Defendants by first class mail,[4] with the exception of Defendant Venny A. Dial.[5] (Dkts. 105, 109.) A hearing on Plaintiff's Motion for Default Judgment was held on December 16, 2022, but the

---

[4] Plaintiff also served two of the Default Defendants, Ana Castillo and Aliyah Mullen, by e-mail. (Dkt. 105.)

[5] Plaintiff's certificates of service regarding the Motion for Default Judgment and hearing exclude Defendant Venny A. Dial. (Dkts. 105, 109.) However, Plaintiff is not required by law to provide notice of a default judgment motion, unless the party has appeared in the case. Fed. R. Civ. P. 55(b)(2); *see also Gomes v. Williams*, 420 F.2d 1364, 1367 (10th Cir. 1970) ("The pertinent portion of Rule 55(b)(2) provides that written notice of the application for default judgment must be served on the party against whom the default judgment is sought if he has appeared personally or by representative."). Because Defendant Dial has never appeared in this case, personally or by representative, Plaintiff was not required to notify him of the motion and hearing. Therefore, the undersigned finds that this apparent oversight does not warrant denial of the Motion for Default Judgment with respect to Defendant Dial.

Default Defendants failed to appear.  To date, none of the Default Defendants has appeared or otherwise participated in these proceedings.

As discussed herein, the record supports a finding that the Default Defendants (other than Defendants Michael Aaron Pritchard and Joi Lynn Pritchard, individually), did unlawfully infringe upon Plaintiff's trademarks and copyrights.  The undersigned recommends the Court grant Plaintiff's Motion for Default Judgment as to all causes of action alleged in the Amended Complaint, specifically trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); Virginia common law unfair competition under Va. Code Ann. § 59.1-92.15; and  copyright infringement under 17 U.S.C. §§ 106 and 501.

**B.  Joinder**

The undersigned raises on its own initiative the apparent misjoinder of defendants.  A plaintiff may join multiple defendants in one action where they seek relief "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and when "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The first prong, often referred to as the "transaction or occurrence" test, is a case-by-case determination for the trial court but generally permits only "reasonably related claims for relief by or against different parties to be tried in a single proceeding."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citation omitted).

Here, Plaintiff has alleged that various individuals and entities, including the Default Defendants, sell products through various e-commerce stores that infringe upon Plaintiff's *Masha and the Bear* trademarks and copyrights.  Plaintiff has alleged the Default Defendants all carried

out the same type of illegal conduct and as a result there may be a "question of law or fact common to all defendants." If so, this would satisfy the second prong of the Rule 20 test.

However, the first prong of the Rule 20 test is clearly not met. This Court has held that distinct individuals or entities independently selling counterfeit goods on the Internet does not satisfy the "transaction or occurrence" test. *See Volkswagen AG v. Unincorporated Associations*, No. 1:17cv1413, 2018 WL 4145080, at *2 (E.D. Va. August 30, 2018) (holding joinder was not proper where "[t]he only commonality between the individuals (or entities) is that they use E-commerce stores like Ebay to perpetuate their counterfeiting activities"). Here, Plaintiff does not allege that the Default Defendants are working together or are otherwise related to one another. (*See* Am. Compl. ¶¶ 27-50.) The Default Defendants are allegedly breaking the same laws by infringing on *Masha and the Bear* trademarks and copyrights online, but they otherwise have no connection. *Id.* Indeed, many Defendants in this case have already settled with Plaintiff separately, demonstrating the distinct and independent nature of each Defendant. (*See, e.g.*, Dkt. 57.) Therefore, based upon Plaintiff's allegations and the record before the Court, joinder is not proper in this case.

Even so, the undersigned recommends the defect in pleading be found harmless. The Federal Rules of Civil Procedure "only apply to the extent that they 'affect any party's substantial rights.'" *Coach, Inc. v. 1941 Coachoutletstore.com*, No. 1:11cv309 (JCC/JFA), 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012) (quoting Fed. R. Civ. P. 61). Moreover, Rule 21, which addresses misjoinder of parties, states that misjoinder is "not a ground for dismissing an action." Because all remaining parties to this action are in default and the subject of Plaintiff's Motion for Default Judgment, and because the Court will separately analyze and determine the liability of each Default Defendant and the damages for which they may be responsible, no Default Defendant is

prejudiced, or has its "substantial rights" impacted, by disregarding any potential defects related to joinder. *See Coach,* 2012 WL 27918, at *4 (finding misjoinder should be disregarded with respect to default judgment because "there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant") (quoting *Lyons P'ship, L.P. v. D & L Amusement & Entm't*, 702 F.Supp.2d 104, 112 (E.D.N.Y. 2010)). Therefore, the undersigned recommends a finding that any defects related to joinder in this case would not impact the rights of the Default Defendants and should be deemed harmless.[6]

## C. Jurisdiction and Venue

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the trademark and copyright claims raise a federal question. Moreover, 28 U.S.C. § 1338 provides jurisdiction to federal district courts for civil actions under federal law relating to trademarks and copyrights. Finally, this Court has supplemental subject matter jurisdiction over Plaintiff's claim under Virginia common law alleging unfair competition, pursuant to 28 U.S.C. § 1367(a), as the state law claim is "part of the same case or controversy" with the federal claims for which this Court has original jurisdiction. (*See* Am. Compl. ¶ 7.)

This Court has personal jurisdiction over the Default Defendants pursuant to the Virginia Long-Arm Statute, Va. Code § 8.01-328.1. For personal jurisdiction over a defendant, the requirements of both federal due process and the forum state's long-arm statute must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir.

---

[6] In the alternative, at least one court has – in a similar case at the default judgment phase – ordered the parties be severed, ordered the Clerk of the Court create new civil cases for each defendant (not required re-service of process), deemed the report and recommendation of the magistrate judge regarding default judgment filed in each new case, and proceeded to enter final default judgment against the individual defendants in each new case. *See Volkswagen AG v. Unincorporated Associations*, No. 1:17cv1413, 2018 WL 4145080, at *3 (E.D. Va. Aug. 30, 2018) (J. Ellis).

2012).  Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The Virginia Long-Arm Statute "extends the jurisdiction of its courts as far as federal due process permits."  *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).  Because federal due process and the Virginia Long-Arm Statute require application of the same standard, the two tests collapse into one due process inquiry.  *See Tire Eng'g & Distrib., LLC*, 682 F.3d at 301.

In the case of Internet-generated contacts, courts ask if "(1) [the defendant] directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

Here, although none of the Default Defendants are residents of Virginia, this Court may exercise personal jurisdiction over the Default Defendants based on their Internet contacts with Virginia.  The Default Defendants established "e-commerce stores and fully interactive commercial Internet websites" and used their e-commerce platforms to market products to, receive payment from, and ship counterfeit products to customers in Virginia.  (Am. Compl. ¶ 9, Schedule B.)  In support of this claim, Plaintiff provided the Declaration of Iuliia Belkova (the "Belkova Declaration"), attached to the Amended Complaint, stating that a third-party investigator hired by Plaintiff investigated all of the Default Defendants' e-commerce stores and "placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the *Masha and the Bear* Marks and Copyrighted Works at issue in this action from each [Default]

Defendant." By way of example, Schedule B of the Amended Complaint includes a screenshot of "creatikacorp's" online "checkout page" which confirms that Plaintiff's investigator purchased allegedly infringing *Masha and the Bear* merchandise and reflects "creatikacorp's" intent to mail the infringing merchandise to an address in Manassas, Virginia, which is located within the Eastern District of Virginia.[7]

The record sufficiently establishes that each of the Default Defendants operated an e-commerce store in which they sold or attempted to sell merchandise that depicted protected *Masha and the Bear* Marks and Copyrighted Works to customers in the Eastern District of Virginia and elsewhere. Indeed, the sale of these counterfeit products to customers is the subject of this lawsuit. As such, the Default Defendants directed Internet activity into Virginia with the intent to engage in business and other interactions, and such activity created potential causes of action. *See ALS Scan*, 293 F.3d at 714. Therefore, the undersigned finds that Plaintiff has satisfied the requirements of both federal due process and the Virginia Long-Arm Statute and has sufficiently alleged facts to support Internet contacts by each of the Default Defendants. *See Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, 241 F. Supp. 3d 708, 716 (E.D. Va. Mar. 20, 2017).

Furthermore, pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because the events giving rise to the claims occurred in this District. (*See* Am. Compl. ¶ 17.)

### D. Service of Process

Service of process has been proper in this action, except in the limited instances noted. The undersigned addresses service of process with respect to each of the Default Defendants below.

#### 1. Aliyah Mullen d/b/a Arakhaim

Defendant Mullen is an individual residing in Great Britain. (Am. Compl. ¶ 28.) On

---

[7] "creatikacorp" is operated by Ana Castillo, one of the Default Defendants.

September 13, 2022, Plaintiff moved for leave to serve Defendant Mullen by e-mail pursuant to Federal Rule of Civil Procedure 4(f)(3).  Rule 4(f)(3) authorizes service on an individual in a foreign country "by other means not prohibited by international agreement, as the court orders." On September 15, 2022, the Court granted Plaintiff's request, finding that the proposed alternative service was not prohibited by international agreement and satisfied due process notice requirements, provided that Plaintiff serve Defendant Mullen by both e-mail and postal mail at the identified United Kingdom postal address that had been provided by Amazon.[8]  (Dkt. 35.)

Subsequently, Plaintiff filed an affidavit of service by its counsel, stating that on September 20, 2022, he sent a copy of the summons, the Amended Complaint, the temporary restraining order, and the order extending the temporary restraining order by postal mail to Defendant Mullen's United Kingdom postal address, as well as Defendant Mullen's e-mail address.  Plaintiff provided a receipt, provided by RPost,[9] indicating that the e-mail had been sent and received.  (Dkt. 43.)

### 2.  Ana Castillo d/b/a creatikacorp

Plaintiff has submitted an affidavit of service, which states that on September 21, 2022, copies of the summons and Amended Complaint were served personally at Defendant Castillo's residence in Tamarac, Florida, upon Francisco Del Gillo, who the process server determined was "fifteen (15) years of age or older" and the "Spouse / Co-Resident" of Defendant Castillo.  (Dkt. 66.)  This complied with Federal Rule of Civil Procedure 4(e)(2)(B), by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."

---

[8] As noted above, Plaintiff filed status reports with the Court to confirm Plaintiff obtained the "names and addresses" and "identifications" upon serving subpoenas on the e-commerce companies.  (*See* Dkts. 14, 19.)

[9] RPost is a third-party company through which a party "can confirm whether the email was received by the email addressee."  (Dkt. 33 at 4-5.)

### 3. Monica G. Baez d/b/a MonicasInventions

Plaintiff has submitted an affidavit of service, which states that on September 23, 2022, copies of the summons and Amended Complaint were served personally at Default Defendant Baez's residence in Brownsville, Texas, upon Maria De La Luz Medrano, who the process server determined was an "adult" and the aunt of Defendant Baez and resided at the premises with Defendant Baez.  (Dkt. 42.)  This also complied with Federal Rule of Civil Procedure 4(e)(2)(B).

### 4. Michael Aaron Pritchard, Joi Lynn Pritchard, and A and J Graphics LLC (a Texas Limited Liability Company), all d/b/a AandJGraphicsLLC

Plaintiff sues Michael Aaron Pritchard ("Michael Pritchard") and Joi Lynn Pritchard ("Joi Pritchard") as individuals, as well as A and J Graphics LLC as "a limited liability company organized under the laws of Texas," alleging that the Joi Pritchard is the owner and Michael Pritchard is the director of A and J Graphics LLC.  (Am. Compl. ¶ 48.)

Plaintiff has submitted a "Return of Service" by a process server, certifying that a copy of the summons and Amended Complaint was "served on A and J Graphics, LLC," at a location in Arlington, Texas, accepted by Michael Pritchard as the registered agent, on September 28, 2022. (Dkt. 52.)  The undersigned finds that this effectuated proper service on A and J Graphics LLC, pursuant to Federal Rule of Civil Procedure 4(h)(1)(B) (permitting service on a corporation by delivering service to certain company representatives including "any other agent authorized by appointment or by law to receive service of process").

With respect to Michael Pritchard as an individual defendant, the undersigned is also satisfied that he was served by "delivering a copy of the summons and of the complaint to the individual personally," when Michael Pritchard accepted service on September 28, 2022  *See* Fed. R. Civ. P. 4(e)(2)(A).

However, with respect to Joi Pritchard, Plaintiff has not provided evidence that it properly

served process.  Plaintiff did not serve Joi Pritchard personally, there is no indication that the location of service was Joi Pritchard's "dwelling or usual place of abode" such that service on Michal Pritchard would suffice, and there is no indication that Michael Pritchard is an authorized agent for Joi Pritchard.  Therefore, Plaintiff has failed to demonstrate proper service on Joi Pritchard individually under the Federal Rules of Civil Procedure and has not suggested that any rule of Virginia or Texas procedure would otherwise remedy the failure.[10]

### 5.  ewatkins67

Plaintiff alleges that ewatkins67 is an "unincorporated association" with its place of business in Missouri.  (*See* Am. Compl. ¶ 50.)  Under Virginia law, unincorporated associations "may sue and be sued under the name by which they are commonly known and called."[11]  Va. Code Ann. § 8.01-15.  To serve an unincorporated association that has its principal place of business outside of Virginia but transacts business in Virginia, "process may be served … on the clerk of the State Corporation Commission, who shall be deemed by virtue of such transaction of business or affairs in the Commonwealth to have been appointed statutory agent of such association[.]"  Va. Code Ann. § 8.01-306.  Here, Plaintiff has submitted a notice that includes a certificate of compliance by the Commonwealth of Virginia State Corporation Commission, certifying that process was served on the Commission in compliance with Va. Code Ann. § 12.1-19.1 and that the Clerk of the Commission then sent the service of process to Defendant ewatkins67 by first class mail on September 27, 2022.  (Dkt. 48.)

---

[10] As addressed below, the undersigned separately finds that Plaintiff fails to state a claim with respect to Joi Pritchard and Michael Pritchard as individuals.

[11] While Virginia law does not define "unincorporated association," other courts have described it as "a voluntary group of persons joined together by mutual consent for the purpose of promoting some stated objective."  *Yonce v. Miners Memorial Hospital Ass'n*, 161 F.Supp. 178, 186 (W.D. Va. 1958).  The undersigned finds that the factual allegations support the conclusion that Defendant ewatkins67 is an unincorporated association.

The undersigned finds that Plaintiff properly served process on Default Defendant ewatkins67 under Virginia law, which satisfied its service requirements under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(h)(1)(A) (permitting service on an association by following the law for service in the state where the district court is located).

### 6.  Venny A. Dial d/b/a Tutuseveryday

Plaintiff has submitted an affidavit of service stating that a process server unsuccessfully attempted to serve a copy of the summons and Amended Complaint on Defendant Dial at his Brooklyn, New York residence on October 3, 2022, and had also unsuccessfully attempted to serve an "alternative address" that was "connected with Defendant per records Plaintiff's counsel obtained from Lexis," also in Brooklyn, New York, on October 1, 2022.  Finally, after these unsuccessful attempts, the process server posted a copy of the summons and Amended Complaint on the "main entrance" of Defendant Dial's residence on October 3, 2022.  (Dkt. 91.)  Furthermore, a separate process server submitted an affidavit that on October 21, 2022, they served a copy of the summons and Amended Complaint on Defendant Dial by first class mail, addressed to Defendant Dial's residence.  *Id.*

Federal Rule of Civil Procedure 4(e)(1) permits service on an individual by "following state law for serving a summons … in the state where the district court is located or where service is made."  Under Virginia law, service upon a person may be achieved even if the person to be served or any suitable person residing at the "usual place of abode" cannot be found there, by "posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode[.]"  Va. Code Ann. § 8.01-296.  Under this method of service, the plaintiff must also, "not less than 10 days before judgment by default may be entered … mail[] to the party served a copy of such process and thereafter file[] in the office of the clerk of the court a

certificate of such mailing." *Id.*

The undersigned finds that by attempting service at Defendant Dial's residence, finding no one to serve, posting service on the "main entrance" of the residence, and subsequently mailing service and filing with the Court a certificate of such mailing, Plaintiff has satisfied its service obligations under Virginia law and thereby satisfied service for Defendant Dial under Rule 4(e)(1).

## II.    FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

### A.  Plaintiff and its Intellectual Property Rights

Plaintiff Animaccord Ltd. is an international licensing company and studio.  (Am. Compl. ¶ 19.)  Plaintiff is the owner of the rights, title, and interest in the animated video series, *Masha and the Bear*.  The series features "a little girl named Masha and a fatherly bear that always keeps her safe from disasters."  (Am. Compl. ¶ 21.)  *Masha and the Bear* is broadcast and streamed throughout the world in over 100 countries and has been translated into 25 languages.  (Am. Compl. ¶ 22.)  The show is widely popular, with certain episodes receiving billions of views.  (Am. Compl. ¶¶ 23-25.)

Plaintiff owns four trademarks for *Masha and the Bear*, each of which has been registered with the United States Patent and Trademark Office ("USPTO"), including three trademarks for the phrase "MASHA AND THE BEAR," registered for various classifications, and a logo that includes the text "*Masha and the Bear*" and an image of the cartoon characters depicting a bear and a "little girl named Masha." (collectively, the  "Marks").  (Am. Compl. ¶ 64.)  The Marks were registered between August 2015 and March 2018.  *Id.*  For three of the Marks, Plaintiff submitted a Section 15 declaration that the trademarks are incontestable, meaning they have been registered

and in use continuously for at least five years, *see* 15 U.S.C. § 1065, which the USPTO has "acknowledged." (Am. Compl. ¶ 65.) As part of its *Masha and the Bear* marketing campaign, Plaintiff has used, advertised, and promoted the Marks in the United States such that the public recognizes the Marks to be sponsored and approved by Plaintiff. (Am. Compl. ¶¶ 69-70.)

Plaintiff also owns copyrights for *Masha and the Bear*, including the nine provided at Exhibit 5 of the Amended Complaint (collectively, the "Works"). The Works feature the characters of *Masha and the Bear*, and each character constitutes an element of the Works. (Am. Compl. ¶¶ 72-75.) The *Masha and the Bear* characters are developed artistically and have distinct, consistent, and widely identifiable traits. (Am. Compl. ¶ 76.) Plaintiff has exclusive rights in the Works and has developed, advertised, and distributed the Works. (Am. Compl. ¶¶ 77-78.)

Plaintiff, and its authorized partners are the only entities permitted to advertise, promote, and distribute *Masha and the Bear* merchandise. (Am. Compl. ¶ 26.) Plaintiff has not authorized the use of the Marks or the Works by any of the Default Defendants. (Am. Compl. ¶ 86; Belkova Decl. ¶ 21.)

### B. The Default Defendants and Alleged Use of Plaintiff's Intellectual Property

Plaintiff alleges that the Default Defendants' e-commerce businesses sell merchandise throughout the United States that uses and depicts *Masha and the Bear* Marks and Works and thereby unlawfully infringe upon the intellectual property rights of Plaintiff. (Am. Compl. ¶¶ 51-52, 79-82.)

Plaintiff's Chief Financial Officer, Iuliia Belkova, provided an affidavit attached to the Amended Complaint that describes Plaintiff's investigative efforts and findings related to this suit. Specifically, Plaintiff retained a third-party to investigate suspected sales of counterfeit goods that were violating Plaintiff's rights in the Marks and the Works. (Belkova Decl. ¶ 18.) The

investigator accessed the e-commerce stores of each Default Defendant and "placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the Masha and the Bear Marks and Copyrighted Works." (Belkova Decl. ¶ 19.) This evidence was obtained and reviewed for all defendants, including the Default Defendants. (Belkova Decl. ¶ 20, n.1.) Ms. Belkova "personally analyzed" the allegedly infringing products, either by reviewing the e-commerce stores at issue or by reviewing the screenshots provided by the investigator, and "concluded the products were non-genuine, unauthorized Masha and the Bear Products," based on the pricing of the products, "certain product and marking characteristics" inconsistent with genuine *Masha and the Bear* products, and Ms. Belkova's knowledge that "Animaccord does not conduct business with Defendants, nor have the Masha and the Bear Marks and Copyrighted Works ever been assigned or licensed to be used by Defendants." (Belkova Decl. ¶ 21.) However, "[d]ue to the number of Defendants" named in the action, not all evidence, *i.e.*, screenshots of the e-commerce stores, was included with the Amended Complaint. (Belkova Decl. ¶ 20, n.1.) Ms. Belkova simply "certifies that similar evidence was obtained and reviewed for each and every Defendant" identified in the complaint. *Id.*

The following is a summary of the information in the record pertaining to the unlawful use of Plaintiff's Marks and Works by each Default Defendant:

### 1. Aliyah Mullen d/b/a Arakhaim

Default Defendant Aliyah Mullen is an individual residing in Great Britain who does business on the Amazon online marketplace under the e-commerce store name "Arakhaim." (Am. Compl. ¶¶ 11, 28.) Plaintiff further alleges that Defendant Mullen "falsely advertises his/her Amazon store as being located at a non-existent address in Huntington, New York," to encourage business from consumers in the United States. (Am. Compl. ¶ 12.) Plaintiff provided a screenshot

from Defendant Mullen's e-commerce store, which shows the store name, "Arakhaim," the store's reviews, which had 16 ratings, and the seller information, including the name "Aliyah Mullen" and the address in Huntington, New York.  *Id.*  Plaintiff has also provided, at Schedule A, attached to the Amended Complaint, the precise URL of Defendant Mullen's e-commerce store.[12]  Other than the allegations in the Amended Complaint and the statements contained in the Belkova Declaration regarding the operation of the Arakhaim e-commerce store, there is no specific information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### 2.  Ana Castillo d/b/a creatikacorp

Defendant Ana Castillo is an individual residing in Tamarac, Florida who does business on the eBay online marketplace under the e-commerce store name "creatikacorp."  (Am. Compl. ¶ 34.)  Plaintiff alleges that Defendant Castillo "purchases counterfeit goods in bulk from China and resells them on ebay.com at a price that is often more than double what she paid to her Chinese suppliers."  *Id.*  Plaintiff also alleges that Defendant Castillo "engaged in fraudulent conduct with respect to the registration of [her] Seller ID[]."  (Am. Compl. ¶ 57.)  Plaintiff has provided, at Schedule A of the Amended Complaint, the precise URL of Defendant Castillo's e-commerce store.

Furthermore, Plaintiff provided, at Schedule B of the Amended Complaint, an "Evidence Collection Report" for a product that was being sold by the e-commerce store "creatikacorp," *i.e.*, Defendant Castillo.  (*See* Am. Compl. ¶ 34, Schedule B.)  The report contains screenshots from

---

[12] In Schedule A, all of the Default Defendants, including Defendant Mullen, are identified only by the "Seller ID #" that Plaintiff used to identify the Defendants prior to discovery of the individual defendants' true identities.  Plaintiff has sufficiently linked the "Seller ID #" to each named defendant, such that there is no confusion as to which defendant Plaintiff is referencing – for Defendant Mullen as well as for all other Default Defendants.  (*See, e.g.*, Am. Compl. ¶ 28.)

eBay, for a product titled "MASHA AND THE BEAR BALLOON SET BIRTHDAY PARTY 6 Pcs 1-3." The "Description" of the product provides, *inter alia*, the following: "Character: Masha"; "Character Family: Masha and Bear"; "Theme: Masha and Bear"; and "Type: Party Balloons." The image of the product shows balloons in the shape of and depicting a cartoon girl. Based upon the undersigned's review of Plaintiff's Marks and Works provided in the Amended Complaint, the undersigned finds that the balloons clearly depict the character Masha, from Plaintiff's *Masha and the Bear* series. The screenshots provided in the report contain other relevant information, such as the price of the product ($12.45) and the number of such products that had been sold via this specific listing ("30 sold"). There is no additional information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### 3.   Monica G. Baez d/b/a MonicasInventions

Default Defendant Monica G. Baez is an individual residing in Texas who does business on the Etsy online marketplace under the e-commerce store name "MonicasInventions." (Am. Compl. ¶ 42.) Plaintiff has provided, at Schedule A of the Amended Complaint, the precise URL of Defendant Baez's e-commerce store. Other than the allegations in the Amended Complaint and the statements contained in Belkova Declaration regarding the operation of the MonicasInventions e-commerce store, there is no specific information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### 4.   Michael Aaron Pritchard, Joi Lynn Pritchard, and A and J Graphics LLC (a Texas Limited Liability Company), all d/b/a A and J Graphics LLC

Default Defendants Joi Pritchard and Michael Pritchard are individuals residing in Texas who are officers of the limited liability company, A and J Graphics LLC, which is also a Default

Defendant in this case.  A and J Graphics LLC does business on the Etsy online marketplace under the e-commerce store name "AandJGraphicsLLC."  (Am. Compl. ¶ 48.)  Plaintiff has provided, at Schedule A of the Amended Complaint, the precise URL of the "A and J Graphics" e-commerce store.

### A.      A and J Graphics LLC

Plaintiff provided, as Exhibit A to its Memorandum in Support of its Motion for Default Judgment, an "Evidence Collection Report" for a product that was being sold by Default Defendant A and J Graphics LLC.  The report contains screenshots from Etsy, for a product titled "Masha Bear 3 12oz Skinny Kids Sippy Cup, Includes 2 Lids, Grow with me Sippy Cup."  The image of the product shows three children's "sippy" cups, depicting a cartoon girl and bear.  Based upon the undersigned's review of Plaintiff's Marks and Works provided in the Amended Complaint, the undersigned finds that the cups clearly depict the characters of Masha and the Bear from Plaintiff's *Masha and the Bear* series.  Under "Meet your Sellers," the page provides "Aaron Pritchard … Owner of AandJGraphicsLLC."  The screenshots contain other relevant information, such as the price of the product ($20) and the total number of sales the "AandJGraphicsLLC" e-commerce store has made ("126 sales").  There is no additional information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### B.      Failure to State a Claim Against Joi Pritchard and Michael Pritchard Individually

As noted above, Plaintiff has sued both Michael Pritchard and Joi Pritchard as individuals, as well as A and J Graphics LLC as "a limited liability company organized under the laws of Texas," alleging that the Joi Pritchard is the owner and Michael Pritchard is the director of A and J Graphics LLC.  (Am. Compl. ¶ 48.)  However, the Amended Complaint fails to state a claim

against Joi Pritchard and Michael Pritchard as individuals; rather, Plaintiff's claims, as currently

pleaded, do not "pierce the corporate veil" and may only attach to the company itself.

It is well established that "[t]he law of the state in which an entity is incorporated generally

governs the question whether a court may pierce an entity's veil." *Sky Cable, LLC v. DIRECTV,*

*Inc.*, 886 F.3d 375, 387 (4th Cir. 2018) (citing *First Nat'l City Bank v. Banco Para El Comercio*

*Exterior de Cuba*, 462 U.S. 611, 621 (1983)). Accordingly, the undersigned applied Texas law to

this question. Under Texas law, it is a "bedrock principle … that an individual can incorporate a

business and thereby normally shield himself from personal liability." *Morello v. State*, 539

S.W.3d 330, 334 (Tex. App.—Austin May 6, 2016) (quoting *Willis v. Donnelly*, 199 S.W.3d 262,

271 (Tex. 2006)). The principle applies likewise to a limited liability company and its agents. *Id.*

at 336-37.

While there are recognized exceptions to the principle set forth by statute and under the

Texas common law, Plaintiff has not alleged that the "veil" of A and J Graphics LLC should be

pierced such that two of its officers and agents, Joi Pritchard and Michael Pritchard, may be held

personally liable. Theories for piercing the corporate veil "must be specifically pled or they are

waived." *Morello*, 539 S.W.3d at 337 (quoting *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15,

22 (Tex. App.—Texarkana Aug. 7, 2012). Therefore, the undersigned finds that Plaintiff has failed

to state a claim against Joi Pritchard and Michael Pritchard individually and recommends the Court

deny default judgment on all claims as to those two Defendants.[13]

### 5. ewatkins67

Default Defendant ewatkins67 is an unincorporated association with an indicated address

---

[13] Hereinafter, where the undersigned refers to recommendations of findings regarding "the Default Defendants," Joi Pritchard and Michael Pritchard are explicitly excluded, as the undersigned recommends denying default judgment on all claims for those two individuals.

in Missouri that does business on the REDBUBBLE.com marketplace under the e-commerce store name "ewatkins67." (Am. Compl. ¶ 50.) Defendant ewatkins67 is "controlled and owned by one or more unknown individuals" who, based upon IP address logs, reside in Jakarta, Indonesia. The owners of ewatkins67 used the fictious [sic] name Julie Watkins when registering for the REDBUBBLE.com seller account." *Id.* Plaintiff alleges that Defendant ewatkins67 "engaged in fraudulent conduct with respect to the registration of [its] Seller ID[]." (Am. Compl. ¶ 57.) Finally, Plaintiff has provided, at Schedule A of the Amended Complaint, the precise URL of Defendant ewatkins67's e-commerce store. Other than the allegations contained in the Amended Complaint and the Belkova Declaration regarding the operation of the ewatkins67 e-commerce store, there is no specific information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### 6. Venny A. Dial d/b/a Tutuseveryday

Defendant Venny A. Dial is an individual residing in New York who does business on the Etsy online marketplace under the e-commerce store name "Tutuseveryday." (Am. Compl. ¶ 46.) Plaintiff has provided, at Schedule A of the Amended Complaint, the precise URL of Defendant Dial's e-commerce store. Other than the allegations in the Amended Complaint and the statements contained in the Belkova Declaration regarding the operation of the Tutuseveryday e-commerce store, there is no specific information in the record pertaining to the scope or the degree of this Default Defendant's use of Plaintiff's Marks or Works or the quality of the counterfeit goods sold.

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. March 26, 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir.

2001)).   Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim.   *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. February 5, 2003).   The undersigned will accordingly consider Plaintiff's Motion for Default Judgment as to its claims of (1) trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) dilution of Plaintiff's trademarks in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) Virginia common law unfair competition under Va. Code Ann. § 59.1-92.15; and (5) copyright infringement under 17 U.S.C. §§ 106 and 501.

The allegations set forth in Plaintiff's Amended Complaint charge the Default Defendants with knowingly and willfully misappropriating Plaintiff's Marks and Works to sell merchandise through their e-commerce stores.   When these facts – now deemed admitted for purposes of this Motion – are applied to the often overlapping elements of each cause of action, they support the recommendation by the undersigned that the Court grant Plaintiff's Motion for Default Judgment as to all claims and against all Default Defendants.[14]

### A.  Trademark Infringement Under the Lanham Act

Plaintiff alleges at Count I a claim of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).   The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive.   15 U.S.C. § 1114(1).   For a claim of trademark infringement, a plaintiff must show that: (1) it has a valid trademark; (2) the trademark is protectable; and (3) the

---

[14] As noted earlier, the undersigned recommends the Court deny default judgment against Michael Aaron Pritchard and Joi Lynn Pritchard in their individual capacity.

defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). In this case, Plaintiff has sufficiently pleaded facts to satisfy each of the three elements of trademark infringement under 15 U.S.C. § 1114(1).

With respect to the first two elements, Plaintiff has established that it has valid trademarks that are protectable. Plaintiff has registered its *Masha and the Bear* Marks with the USPTO, the Marks are distinct, and the USPTO has acknowledged that three of the four Marks are incontestable pursuant to 15 U.S.C. § 1065. (Am. Compl. ¶¶ 64-65; Belkova Decl. ¶ 5.)

With respect to the third element, namely the likelihood of confusion, the Fourth Circuit has stated that nine factors should generally be considered:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

*George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (first citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)). Despite the numerous factors, "[n]ot all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *Id.* (quoting *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)). However, when the allegedly infringing mark is nearly an exact imitation of a plaintiff's mark in an apparent attempt to capitalize upon its popularity, "there is a presumption of a likelihood of confusion." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Here, Plaintiff has sufficiently alleged that the Default Defendants' use of the Marks is likely to confuse consumers. First, the Marks are "strong" and "distinct" in the marketplace. Plaintiff has alleged that the Marks are widely known, viewed billions of times by consumers around the world, and have been registered and in use since as early as 2015. (Am. Compl. ¶¶ 22-24.) The characters, particularly when presented together, are unique and the storyline is the only one of its kind. Second, Plaintiff has alleged that each of the Default Defendants used exact copies and confusingly similar copies of the Marks, including the distinctive characters' names and likenesses, in their e-commerce stores and on counterfeit merchandise sold through those online stores. (*See* Am. Compl. ¶¶ 79-86; Belkova Decl. ¶¶ 19-21.) This properly pleaded allegation which is deemed admitted gives rise to the "presumption of a likelihood of confusion" by consumers, and there is no evidence in the record to rebut this presumption.[15] *Polo Fashions,* 816 F.2d at 148. Third, due to *Masha and the Bear*'s wide success and recognition, unique characters and storyline, Plaintiff's prior registration of the Marks, and Plaintiff's years of previous use of the Marks, Plaintiff plausibly alleges that the Default Defendants acted with the "knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff." (Am. Compl. ¶ 80.) The Default Defendants clearly intended to profit from the unauthorized sale of merchandise depicting Plaintiff's protected Marks, while at the same time Plaintiff was attempting to also profit from the authorized sale of merchandise depicting its protected Marks. The undersigned finds this competition in the online marketplace between authorized and unauthorized merchandise would have likely caused confusion among consumers.

---

[15] The undersigned finds this presumption is further strengthened regarding the Marks used by Default Defendants Ana Castillo d/b/a creatikacorp and A and J Graphics LLC. The undersigned bases this finding on a review of the screenshots of counterfeit goods sold by these two Default Defendants, attached to the Amended Complaint at Schedule B and the Memorandum in Support of Motion for Default Judgement at Exhibit A, respectively.

For these reasons, the undersigned finds Plaintiff has satisfied all three elements of trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), and recommends the Court grant default judgment against the Default Defendants with respect to this claim.

## B.  Trademark Counterfeiting Under the Lanham Act

Plaintiff also alleges at Count I trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1).  Trademark counterfeiting is much like infringement, applied under the same statutory provision; however, courts have applied a separate test to establish a counterfeiting claim, requiring a plaintiff show:  "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers."  *Associated Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3 (E.D. Va. Mar. 19, 2013).  A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiff has sufficiently pleaded facts to support a claim of trademark counterfeiting under 15 U.S.C. § 1114(1).  Many of the allegations noted with regard to the claim of trademark infringement also apply to the claim of trademark counterfeiting, including that the Default Defendants acted with knowledge of Plaintiff's protected Marks and with intent to copy those Marks to benefit from the goodwill generated by Plaintiff.  (*See* Am. Compl. ¶¶ 80, 84.)  The counterfeit merchandise sold by the Default Defendants depicted marks that were "identical with, or substantially indistinguishable from" Plaintiff's Marks.  This includes depictions of distinctive characters and use of the *Masha and the Bear* name brand.  (*See* Am. Compl. ¶ 79.)  Furthermore, Plaintiff has alleged that Default Defendants used counterfeit marks in commerce, specifically for

the purpose of selling counterfeit merchandise through e-commerce stores and to make their e-commerce stores more attractive to consumers who are searching for Plaintiff's goods.  (*See* Am. Compl. ¶ 79-86.)  Finally, for the same reasons noted with respect to trademark infringement, Plaintiff has sufficiently alleged that Default Defendants' use of counterfeit marks was likely to confuse consumers.

For these reasons, the undersigned finds Plaintiff has satisfied all four elements of trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1114(1), and recommends the Court grant default judgment against the Default Defendants with respect to this claim.

### C.  Unfair Competition Under the Lanham Act

Plaintiff alleges at Count II that the Default Defendants engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).  Claims under this provision of the statute are sometimes referred to as "false designation" claims.  It is well established that stating a claim for unfair competition, *i.e.*, false designation, under this provision requires "essentially the same … elements for a trademark infringement claim under the Lanham Act."  *Automobili Lamborghini S.p.A. v. Garcia*, 467 F. Supp. 3d 385, 404 (E.D. Va. June 16, 2020) (citing *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?") (internal citation and quotation marks omitted).  Thus, as addressed by the undersigned above, Plaintiff has sufficiently pleaded a valid, protectable trademark and a likelihood of confusion for consumers, thereby satisfying its pleading requirements for Count II, unfair competition under the Lanham Act.

**D.  Trademark Dilution Under the Lanham Act**

Plaintiff alleges at Count III dilution of its Marks.  To state a claim of federal trademark dilution under 15 U.S.C. § 1125(c), a plaintiff must show:

> (1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007).

First, the Marks are famous and distinctive.  A mark is "famous" when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Plaintiff has plausibly alleged that *Masha and the Bear* is widely consumed throughout the world and in the United States.  It is available to view on Netflix and YouTube, and a single episode has generated billions of views online.  (Am. Compl. ¶¶ 22-23.)  The Marks are also distinctive.  All four of the *Masha and the Bear* Marks, including the word marks and logo, are "fanciful" and "arbitrary," making the Marks inherently distinctive.  *Venetian Casino Resort v. Venetiangold.Com*, 380 F. Supp. 2d 737, 742 (E.D. Va. July 28, 2005) (citing *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996)).

Second, the record is clear that the Default Defendants are using Plaintiff's famous and distinctive Marks to sell merchandise through their e-commerce stores.  "Use in commerce" is defined under the Lanham Act as "the bona fide use of a mark in the ordinary course of trade."  15 U.S.C. § 1127.  Here, Plaintiff has sufficiently alleged that the Default Defendants use its Marks to sell products on the internet, which the undersigned finds qualifies as use "use in commerce."  The Default Defendants unauthorized sale of products depicting Plaintiff's Marks inevitably

results in the dilution of Plaintiff's Marks to some measurable degree.

Third, the allegations in the Amended Complaint, (Am. Compl. ¶¶ 79-86), and the statements in the Belkova Declaration, (Belkova Decl. ¶¶ 19-21), that describe the infringing conduct by the Default Defendants, as well as the screenshots attached to the Amended Complaint of counterfeit goods sold by Defendants Ana Castillo d/b/a creatikacorp and A and J Graphics LLC, are sufficient for the undersigned to find a similarity between the marks used by the Defendants and Plaintiff's famous Marks that gives rise to an association between the Marks. Indeed, Plaintiff alleges that the Default Defendants use "exact copies and confusingly similar copies" of Plaintiff's Marks, and the screenshots of products sold by Default Defendants Castillo and A and J Graphics LLC depict exact copies of the *Masha and the Bear* Marks.  (Am. Compl. ¶ 79, Schedule B; Mem. Supp. Mot. for Default J. at Exh. A.)

Finally, to satisfy the fourth element, Plaintiff would need to allege "dilution by blurring or dilution by tarnishment."  15 U.S.C. § 1125(c)(1); *see also Louis Vuitton*, 507 F.3d at 264-65. Plaintiff may have intended to allege "tarnishment," but failed to do so.  To state a claim for tarnishment, a plaintiff must plausibly allege that the mark was "used on unwholesome or inferior goods or services that may create a negative association with the goods or services covered by the famous mark."  *Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 605, 614 (E.D. Va. Feb. 27, 1997); *see also* 15 U.S.C. § 1125(c)(2)(C) (defining dilution by tarnishment as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark").  However, Plaintiff merely claims the Default Defendants' products "are of a quality substantially and materially different than that of Plaintiff's genuine goods," "are well below the prices of similar genuine *Masha and the Bear* branded goods," have "certain product and marking characteristics which are not

consistent with genuine *Masha and the Bear* branded goods," and Default Defendants' use of the marks will make consumers believe they are buying Plaintiff's high quality goods, originating from, associated with, or approved by Plaintiff, when in fact they are not.  (Am. Compl. ¶¶ 80, 82; Belkova Decl. ¶ 21.)  Plaintiff needed to allege the Default Defendants' merchandise was of *inferior* quality to demonstrate that their products tarnished or harmed the reputation of Plaintiff's Marks.  But Plaintiff fails to allege a clear qualitative difference between its authorized merchandise and the goods sold by the Default Defendants.  The allegations state only that the unauthorized goods are "different" or cost less.  Based on the record it is equally possible that the Default Defendants' merchandise was "different" but still a "high" quality, like Plaintiff's authorized merchandise.  As a result, Plaintiff's allegations, even taken as true, fail to properly allege a likely harm to the reputation of Plaintiff's Marks.

Plaintiff also alleges dilution by blurring, which the statute defines as an "association arising between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B).  The statute also provides factors for a court to consider in determining whether dilution by blurring is present, including the "degree of similarity" between the marks; the "degree of inherent or acquired distinctiveness" of the famous mark; the "degree of recognition" of the famous mark; and whether the alleged infringer "intended to create an association with the famous mark." *Id.* at 1125(c)(2)(B)(i)-(vi).  Here, Plaintiff has alleged that the Default Defendants' use of its Marks "whittles away the distinctiveness" of its *Masha and the Bear* Marks.  (Am. Compl. ¶ 113.)  This claim is supported by allegations that the Default Defendants use "exact copies or confusingly similar copies" of the Marks on their merchandise and have "branded" their products as *Masha and the Bear* products without authorization.  (Am. Compl. ¶ 79; Belkova Decl. ¶ 19, 21.)  Applying the relevant statutory factors, Plaintiff has

28

demonstrated that the Default Defendants used highly similar marks – in fact, exact copies – to Plaintiff's famous Marks, which are distinct and recognizable, *see supra* Section III.A, and the Default Defendants intended to create an association between their products and Plaintiff's Marks in order to "trade on" the goodwill of *Masha and the Bear*. (Am. Compl. ¶ 87.) Thus, Plaintiff has sufficiently alleged that the Default Defendants' use of the Marks impairs the distinctiveness, and thereby dilutes, Plaintiff's Marks. *See Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. May 19, 2003) (finding defendant liable for dilution by blurring where website "contained the [famous] mark in its entirety, and would be immediately associated with the [plaintiff] … diminishing the selling power of the mark"). For these reasons, Plaintiff has satisfied the fourth element of the dilution claim.

Therefore, the undersigned finds that Plaintiff has satisfied all four elements of federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and recommends the Court grant default judgment against the Default Defendants with respect to this claim.

### E. Virginia Common Law Unfair Competition

Plaintiff alleges at Count IV unfair competition under Virginia common law. This claim, like the federal unfair competition claim, does not require a separate analysis, as the test is "essentially the same" as for trademark infringement under the Lanham Act, and courts typically analyze such claims concurrently. *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 170, n.9 (4th Cir. 2006) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). The undersigned applied the allegations in the Amended Complaint to the elements of trademark infringement under the Lanham Act in Section III A above, finding Plaintiff had satisfied each element of the trademark infringement claim. Applying the same analysis here, the undersigned finds that Plaintiff has sufficiently pleaded a valid, protectable trademark and a

likelihood of confusion among consumers, and therefore recommends the Court grant default judgment on the unfair competition claim under Virginia common law.

## F. Copyright Infringement Under the Copyright Act

Finally, Plaintiff alleges a claim of copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501. The Copyright Act provides that only a copyright owner has exclusive rights to its copyrighted works, and anyone who violates the copyright owner's exclusive rights is infringing. 17 U.S.C. §§ 106, 501(a). For a claim of copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Here, Plaintiff has sufficiently pled facts to support a claim of copyright infringement under 17 U.S.C. § 501. First, Plaintiff has established that it is the owner of a valid copyright for *Masha and the Bear*, *i.e.*, the Works, which include the characters of *Masha and the Bear* as original elements of the Works. (Am. Compl. ¶¶ 72-76, Exh. 5.) Plaintiff provides in the Amended Complaint exemplar images of the "Masha" character and the "Bear" character, and further provides the "certificate number" for each of nine copyrights registered in the United States. *Id.* Second, Plaintiff has alleged that the Default Defendants copied the *Masha and the Bear* Works and used them to sell products to the general public through their e-commerce stores. (Am. Compl. ¶¶ 79-80, Schedule B, Belkova Decl. ¶ 21.) Therefore, the undersigned finds that Plaintiff has sufficiently alleged a claim of copyright infringement under the Copyright Act, 17 U.S.C. § 501, and recommends the Court grant default judgment against the Default Defendants with respect to this claim.

## IV.   REQUESTED RELIEF

Plaintiff seeks the following relief against the Default Defendants:  statutory damages under the Lanham Act and Copyright Act, permanent injunctive relief under the Lanham Act and Copyright Act, attorneys' fees, and costs.  (Am. Compl. Prayer for Relief; Mem. Supp. Mot. for Default J. at 12-17.)  The undersigned considers each of Plaintiff's requests for relief below.

### A.  Statutory Damages

Under both the Lanham Act and Copyright Act, a plaintiff has the option to elect statutory damages rather than actual damages.  Statutory damages define lower and upper limits of monetary damages, but within those limits "the court's discretion and sense of justice are controlling."  *Seoul Broadcasting System Intern., Inc. v. Young Min Ro*, No. 1:09cv433 (LMB/IDD), 2011 WL 3207024, at *6 (E.D. Va. July 27, 2011) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106 (1919)).  Statutory damages are "meant to encompass both compensation for the plaintiffs and deterrence of the defendants."  *Id.* at *7 (citing cases); *see also Larsen v. Terk Tech. Corp.*, 151 F.3d 140, 149–50 (4th Cir. 1998).  As a result, "courts generally begin by considering the underlying economic realities of the situation," but that analysis may "merely serve as a floor for any statutory damages recovery" as the court will also consider other factors, "such … as effective deterrence."  *Id.* at *8.

### 1.  Statutory Damages Under the Lanham Act

Plaintiff seeks statutory damages in the amount of $200,000 from each Default Defendant pursuant to the Lanham Act, 15 U.S.C. § 1117(c).  (Mem. Supp. Mot. for Default J. at 12-13.)  The Lanham Act provides that statutory damages will be "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  If the Court finds the use of the counterfeit mark was

willful, the maximum increases to $2,000,000.  15 U.S.C. § 1117(c)(2).

As addressed above, Plaintiff has sufficiently alleged that Default Defendants used counterfeits of Plaintiff's Marks, *see supra* Section III, and Plaintiff therefore may elect statutory damages under this provision.  Plaintiff's request for a single award of statutory damages is deemed to encompass all of Plaintiff's Marks and all of Plaintiff claims under the Lanham Act.  (Mem. Supp. Default J. at 12-13.)

Turning first to the issue of willfulness, Plaintiff argues that the Default Defendants' trademark infringement was willful.[16]  (Mem. Supp. Default J. at 13.)  "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility."  *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. November 22, 2011) (internal citations omitted).  Here, there are properly pleaded allegations that support the reasonable inference that the Default Defendants acted with knowledge or, at the least, reckless disregard when they misappropriated Plaintiff's Marks and Works.  The Default Defendants purposefully sold counterfeit goods online that copied or imitated the widely popular *Masha and the Bear* name and characters, without seeking or obtaining authorization.  *See Diane Von Furstenburg Studio v. Snyder*, No. 1:06cv1356(JCC), 2007 WL 3143690, at *4 (E.D. Va. Oct. 23, 2007) (defendants who sell counterfeit goods as "legitimate [trademarked] product are decidedly not innocent infringers") (internal citation and quotation marks omitted).  Considering Default Defendants' conduct, as well as the unique nature of the *Masha and the Bear* brand, the distinctive characters, and the international popularity of the series, the undersigned recommends the Court

---

[16] Although Plaintiff's requested damages – $200,000 for each Default Defendant – falls within the bounds of permissible statutory damages for non-willful infringement, the willful nature of the infringement may nonetheless impact the undersigned's consideration of what amount is "just." 15 U.S.C. § 1117(c)(1).

find the Default Defendants' violations to be willful.

### a.  Economic Realities

In determining a just award of statutory damages, the undersigned first considers the "underlying economic realities." *Seoul Broadcasting*, 2011 WL 3207024, at *6.  In this regard, the record includes almost no relevant information that would permit the undersigned to engage in a careful and reasoned analysis of the underlying economic realities as they relate to the Plaintiff or any of the Default Defendants.[17]

First, Plaintiff fails to allege any fact or information regarding the economic impact of the infringing conduct on its own business operations.  While Plaintiff states it "has alleged extensive damages due to Defendants' conduct," (Mem. Supp. Mot for Default J. at 13), the only allegations it points to claim generally "irreparable injury" and "substantial damages," without factual allegations in support.  (Am. Compl. ¶¶ 92-93.)  Plaintiff provides no information regarding its own financial investment in the Marks and Works.  Plaintiff provides no information about the amount of income generated through its sale of the Marks and Works.  Plaintiff offers no information about the scope of its marketing and sales operations.  Plaintiff offers no analysis of the impact of the sale of counterfeit goods by the Default Defendants (or by any other party) on its profit or loss margins.  Plaintiff does not even allege whether it sells the same type of merchandise as the Default Defendants.

Second, Plaintiff makes little effort to identify facts that would shed light on the underlying economic realities as they pertain to any of the Default Defendants.  To be clear, the undersigned is not penalizing Plaintiff for not being able to engage in the discovery process with the Default

---

[17] The undersigned recognizes that Plaintiff offered to supplement the record if the Court so requested, but the undersigned finds it improper to counsel Plaintiff on how to perfect the record to prosecute its Motion for Default Judgment.

Defendants in order to ascertain relevant financial information, including their windfall from selling Plaintiff's Marks and Works.  The undersigned is, however, holding Plaintiff accountable for failing to engage in basic pre-litigation investigation to determine, at least in part, the scope of the Default Defendants' infringing conduct and its economic impact – an investigation that for the most part could have been conducted through a slightly more detailed analysis of the Default Defendants' e-commerce stores and online presence.  For example, with regard to each Default Defendant, Plaintiff failed to investigate or allege (1) a full description of all types of merchandise for sale; (2) the number of items for sale; (3)  the cost of the items for sale; (4) whether *Masha and the Bear* merchandise were the only products for sale, and if not, were they a large or small percentage of the overall inventory; (5) the sophistication of the website; (6) methods of payment; and (7) any reviews or commentary about the merchandise or the overall business operation.

There are a few notable exceptions to Plaintiff's failure to allege facts regarding the underlying economic status of the Default Defendants.  First, Plaintiff alleges that Default Defendant Ana Castillo d/b/a creatikacorp "purchases counterfeit goods in bulk from China and resells them on ebay.com at a price that is often more than double what she paid to her Chinese suppliers." (Am. Compl. ¶ 34.)  This properly pleaded allegation, deemed admitted, is helpful in establishing some general sense of the scope of Defendant Castillo's online business.  However, it is unclear if the "counterfeit goods" referred to by Plaintiff include only *Masha and the Bear* merchandise or also includes other products beyond the scope of this litigation.  In addition, Plaintiff fails to quantify what constitutes "purchases … in bulk," state what Defendant Castillo paid her "Chinese suppliers," or what price Defendant Castillo charged her retail customers.  Even though Plaintiff alleges Defendant Castillo sold counterfeit goods "at a price that is often more than double what she paid to her Chinese suppliers," Plaintiff fails to allege what she paid her

Chinese suppliers or the quantities she purchased.  Given Plaintiff's allegation, and assuming there is a good faith factual basis for this claim, it would seem this information is in the possession of Plaintiff but for some reason is not in the record before the undersigned.  Here, it would have been particularly instructive for Plaintiff to provide some information about the overall size of Defendant Castillo's online inventory.  Instead, Plaintiff only provides a screenshot that states the price of a single *Masha and the Bear* balloon set is $12.45 and 30 sets of balloons have bene sold.  Nevertheless, as limited as this allegation is, it does distinguish Defendant Castillo from the other Default Defendants.  Another example which the undersigned finds of limited probative value is the screenshot that depicts A and J Graphics LLC selling children's cups for a price of $20 each and showing that the A and J Graphics store has made 126 sales total.

Based on the minimal amount of information alleged by Plaintiff, the undersigned has little insight as to whether the Default Defendants were "Mom and Pop" businesses producing little revenue and having a negligible impact on Plaintiff's worldwide business operations, or significant independent counterfeiting operations.  Plaintiff bears the burden of properly pleading allegations that would support a reasonable finding regarding the underlying economic realities associated with this litigation.  Having failed to do so, the undersigned gives only modest weight to this factor in awarding statutory damages.

### b.  Deterrence

Next, in determining an appropriate award of statutory damages the undersigned addresses the need for deterrence.  See *Seoul Broadcasting*, 2011 WL 3207024, at *6.  For the reasons set forth in Section 4.A.1 above, the undersigned finds that each Default Defendant acted willfully, that is, they knew their use of the Marks and Works was infringement or recklessly disregarded the possibility.  The intentional or reckless nature of the Default Defendants' conduct  requires an

award of damages sufficient to deter the Default Defendants from engaging in any future trademark or copyright infringement.[18]

Plaintiff also alleges that Default Defendants Aliyah Mullen d/b/a Arakhaim and ewatkins67 engaged in intentionally fraudulent conduct.  Specifically, Plaintiff alleges Defendant Mullen "falsely advertises his/her Amazon store as being located at a non-existent address in Huntington, New York," to encourage business from consumers in the United States.  (Am. Compl. ¶ 12.).  Plaintiff also alleges Defendant ewatkins67 is "controlled and owned by one or more unknown individuals" who, based upon IP address logs, reside in Jakarta, Indonesia.  Plaintiff also alleges the owners of ewatkins67 "used the fictious [sic] name Julie Watkins when registering for the REDBUBBLE.com seller account."  *Id.*  These allegations, deemed admitted, demonstrate that a higher award of damages against these two Default Defendants is required to achieve the necessary deterrent effect.

### c.  Recommended Award

For these reasons, the undersigned recommends that a reasonable and just award of damages for violations of the Lanham Act are as follows:

| Default Defendant | Damages |
|---|---|
| Aliyah Mullen d/b/a Arakhaim | $85,000 |
| Ana Castillo d/b/a creatikacorp | $85,000 |
| Monica G. Baez d/b/a MonicasInventions | $70,000 |
| A and J Graphics LLC | $70,000 |
| Ewatkins67 | $85,000 |

---

[18] Plaintiff has offered no evidence regarding the need for general deterrence or what damage award would act as a general deterrent, therefore the undersigned limits its consideration to specific deterrence regarding the Default Defendants.

| Venny A. Dial d/b/a Tutuseveryday | $70,000 |
|---|---|

### 2.  Statutory Damages Under the Copyright Act

Plaintiff also seeks statutory damages in the amount of $50,000 from each Default Defendant pursuant to the Copyright Act, 17 U.S.C. § 504(c).  (Mem. Supp. Default J. at 13-15.)  Here, again, the statute permits a plaintiff to elect statutory damages where a defendant is liable for copyright infringement.  Statutory damages under this provision may be "not less than $750 or more than $30,000 as the Court considers just."  17 U.S.C. § 504(c)(1).  If the Court finds the copyright infringement was willful, the Court "in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).

As with the Lanham Act violations, Plaintiff argues that the Default Defendants' copyright violations were willful.  (Mem. Supp. Mot. for Default J. at 14.)  Courts have applied the same willfulness standard to violations of the Copyright Act as to violations of the Lanham Act; namely, that the defendant knew or acted with reckless disregard as to whether their conduct constituted copyright infringement.  *See Seoul Broadcasting*, 2011 WL 3207024, at *7 (citing *Lyons P'ship. L.P. v. Software & Morris Costumes, Inc.*, 243 F.3d 789, 799–800 (4th Cir. 2001); *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 498 (4th Cir. 1996)).  Again, for the same reasons the Default Defendants willfully violated the Lanham Act, the undersigned finds the Default Defendants willfully violated the Copyright Act.  *See infra* Section IV.A.1.

The undersigned finds the same underlying economic realities and deterrence needs discussed with respect to the Default Defendants' Lanham Act violations apply equally to the Default Defendants' Copyright Act violations.  Considering those factors, as well as the statutory range under 17 U.S.C. § 504(c)(1) and (2), the undersigned recommends that a reasonable and just

award of damages for the Default Defendants violations of the Copyright Act are as follows:

| Default Defendant | Damages |
|---|---|
| Aliyah Mullen d/b/a Arakhaim | $15,000 |
| Ana Castillo d/b/a creatikacorp | $15,000 |
| Monica G. Baez d/b/a MonicasInventions | $5,000 |
| A and J Graphics LLC | $5,000 |
| Ewatkins67 | $15,000 |
| Venny A. Dial d/b/a Tutuseveryday | $5,000 |

### 3.  Other Monetary Relief

Plaintiff has not requested any further monetary relief under its federal or Virginia state law claims, nor has Plaintiff offered any evidence of actual damages, and the undersigned therefore recommends no further monetary relief.

### 4.  Total Recommended Award of  Damages

Based on the foregoing, the undersigned recommends the total damages (excluding attorneys' fees and costs) to be award to Plaintiff from the Default Defendants are as follows:

| Default Defendant | Damages |
|---|---|
| Aliyah Mullen d/b/a Arakhaim | $100,000 |
| Ana Castillo d/b/a creatikacorp | $100,000 |
| Monica G. Baez d/b/a MonicasInventions | $75,000 |
| A and J Graphics LLC | $75,000 |
| Ewatkins67 | $100,000 |
| Venny A. Dial d/b/a Tutuseveryday | $75,000 |

## B. Permanent Injunctive Relief

Plaintiff seeks the entry of a permanent injunction against the Default Defendants on the same terms as the August 17, 2022 temporary restraining order. (Mem. Supp. Default J. at 15.) Specifically, Default Defendants would be restrained from making or selling any further products that bear Plaintiff's Marks or Works, and third-party institutions, including the e-commerce platforms, would continue to freeze Default Defendants' funds. (Dkt. 11.)

Both the Lanham Act and the Copyright Act provide that a court may grant injunctions to prevent the infringement of trademarks and copyrights. 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The undersigned recommends that a permanent injunction as requested by Plaintiff is appropriate. All four elements of the Fourth Circuit test for a permanent injunction are satisfied. First, Plaintiff suffered and continues to suffer irreparable injury as Default Defendants have infringed its Marks and Works through online sales of counterfeit products. In the context of trademark infringement, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (citation omitted). With regard to copyright infringement, "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps*, 492 F.3d at 544.

Therefore, the undersigned's determination that the Default Defendants infringed Plaintiff's Marks and Works, thereby creating a likelihood of confusion for consumers, supports a finding of irreparable injury.  Second, other remedies available at law are inadequate to compensate Plaintiff. Despite repeated attempts to communicate with Default Defendant and notify them of this lawsuit, Default Defendants have failed to respond.  The lack of a response from Default Defendants shows a threat of continued infringement and counterfeiting, as well as a likely refusal to cooperate with any remedy short of a permanent injunction.  Third, the only hardship that would befall the Default Defendants by granting Plaintiff's requested permanent injunction would be the requirement to follow clearly established trademark and copyright law.  Therefore, the balance of hardships weighs in Plaintiff's favor.  Fourth and finally, public interest favors an injunction. An injunction would prevent consumer confusion caused by the Default Defendants' trademark and copyright infringement.  Furthermore, an injunction would maintain the integrity of Plaintiff's well-known Marks and Works.

Therefore, the undersigned recommends that the injunctive relief provided in the August 17, 2022 temporary restraining order should be granted to Plaintiff as permanent injunctive relief. However, because a permanent freeze of Default Defendants' funds would be an unnecessary burden, the undersigned recommends the Court clarify that Default Defendants' funds will be frozen only until the e-commerce platforms have transferred the seized funds to Plaintiff, as addressed below.

Plaintiff also asks that, beyond the terms of the temporary restraining order, the Court order the "e-commerce providers [] turnover the seized funds to go towards satisfaction of the money judgment." *Id.*  This Court and others have permitted this remedy, particularly where, as here, certain defendants reside abroad, would be difficult to locate, or are unlikely to be able to satisfy

the entire judgment independent of the seized funds. *See Volkswagen AG et al v. The Unincorporated Associations Identified in Schedule A*, No. 1:17-cv-01413-TSE-JFA, 2018 WL 4524108, at *8 (E.D. Va. July 13, 2018), *report and recommendation adopted in part by* 2018 WL 4145080 (citing cases).  Because Plaintiff would likely face such issues with collection of the judgment in this case, the undersigned recommends that the Court order the e-commerce providers, including Amazon, eBay, Etsy, and Redbubble, to transfer any monies currently restrained that were within the Default Defendants' accounts to be released to Plaintiff as payment, up to but not greater than the judgment awarded by the Court.  Once this transfer is complete, Default Defendants' funds should no longer be frozen.

### C.  Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees from the Default Defendants.  (Mem. Supp. Mot. for Default J. at 16.)  Plaintiff correctly notes that both the Lanham Act and Copyright Act permit attorneys' fees to the prevailing party, at the discretion of the court.  15 U.S.C. § 1117(a); 17 U.S.C. § 505.

Within the Fourth Circuit, courts apply a four factor test to determine whether attorneys' fees are appropriate:  "1) the motivation of the parties, 2) the objective reasonableness of the legal and factual positions advanced, 3) the need in particular circumstances to advance considerations of compensation and deterrence, and 4) any other relevant factor presented." *X-It Products, LLC v. Walter Kidde Portable Equipment, Inc.*, 227 F. Supp. 2d 494, 540 (E.D. Va. June 25, 2002) (quoting *Diamond Star Building Corporation v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994)) (quotation marks omitted).  The undersigned finds that not only is Plaintiff the prevailing party, but the *Diamond Star* factors weigh in favor of awarding attorneys' fees.  In particular, Plaintiff has demonstrated that Default Defendants acted to willfully infringe on Plaintiff's Marks and Works in order to cause consumer confusion and benefit therefrom.  Plaintiff's suit is motivated by the need to stop the infringement, protect its intellectual property, obtain compensation, and

41

deter these defendants and other potential infringers.  Therefore, the undersigned recommends an award of attorneys' fees to Plaintiff.[19]  *See Graduate Mgmt. Admission Council*, 267 F. Supp. 2d at 512 ("The factors favor an award of attorneys' fees in this case, particularly the need for deterrence.").

Having determined attorneys' fees are appropriate, the next question is what amount of fees is "reasonable."  15 U.S.C. § 1117(a); 17 U.S.C. § 505.  In the Fourth Circuit, courts begin with a "lodestar" figure, which is based upon a reasonable number of hours and a reasonable rate by the attorney or attorneys.  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).  In determining what is a reasonable number of hours and rate, the court is guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44 (internal citations omitted).

Plaintiff has provided an affidavit by counsel, Kerry S. Culpepper, providing the hours worked and the rate charged.  (Culpepper Decl. at 2-8.)  As an initial matter, Plaintiff has

---

[19] The Lanham Act imposes an additional standard for attorneys' fees beyond that in the Copyright Act; namely, that attorneys' fees will go to the prevailing party "in exceptional cases." 15 U.S.C. § 1117(a).  Courts have interpreted "exceptional" in this context to mean "conduct [that] was malicious, fraudulent, willful, or deliberate in nature." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001).  Here, as the undersigned has already found, the Default Defendants acted, at the least, willfully and deliberately in their infringement of Plaintiff's Mark and Works in order to sell counterfeit products online.  Therefore, Plaintiff is entitled to attorneys' fees under the Lanham Act.

sufficiently demonstrated that rates of lead counsel, Mr. Culpepper, and local counsel are reasonable.[20]

However, with respect to the number of hours, the affidavit reflects *all* hours Mr. Culpepper worked for *all* defendants, not just the Default Defendants.  Indeed, Plaintiff brought this case against defendants that operate under 30 distinct seller IDs.  (*See* Am. Compl. at Schedule A.) Plaintiff's Motion for Default Judgment, on the other hand, is brought against the Default Defendants operating under six distinct seller IDs.  (*See* Mem. Supp. Mot. for Default J. at 4-6.) Plaintiff settled with and voluntarily dismissed the remaining defendants.  (*See, e.g.*, Dkt. 57.)  It is not reasonable to require a small portion of the total defendants to pay attorneys' fees for Plaintiff's work relating to *all* defendants, particularly given *all* defendants were improperly joined in a single cause of action.  Rather, the undersigned finds that awarding Plaintiff a percentage of the total hours, based on the number of Default Defendants against which default judgment will be granted, is reasonable and appropriate.

Because Plaintiff's case – in whole – is based on 30 sellers, but Plaintiff's Motion for Default Judgment is based upon just six, the undersigned finds it reasonable that one-fifth, *i.e.*, 20 percent, of Mr. Culpepper's hours may be reasonably applied to an award of attorneys' fees with respect to Plaintiff's Motion for Default Judgment.  Before applying this percentage, however, the undersigned finds it reasonable that all hours Mr. Culpepper spent on the Motions for Entry of Default and for Default Judgment are applicable.  Based upon notations in the affidavit that clearly state where Mr. Culpepper worked on those Motions, that is a total of seven hours.  Of the remaining 114.33 hours, one-fifth – 22.87 – are reasonably applied.  At Mr. Culpepper's rate of

---

[20] Local counsel appears to have been paid a lump sum of $1,500 for the case, while Mr. Culpepper performed the substantive work.

$400, the undersigned finds that a total of $11,948 in attorneys' fees for Mr. Culpepper's work is reasonable.[21]   The same percentage should be applied to local counsel's fee, such that $300 of local counsel's fee is reasonably applied.   Therefore, the undersigned finds that the total attorneys' fees that should be awarded to Plaintiff is $12,248, for which each Default Defendant is liable for one-sixth, or $2,041.33.[22]

Plaintiff is also entitled to its costs under the Lanham Act and the Copyright Act.  15 U.S.C. § 1117(a); 17 U.S.C. § 505.   Plaintiff provided to the Court a ledger of its costs incurred. (Culpepper Decl. at 2-4.)  Again, however, these costs relate to the *entire* case and *all* defendants, not just the Default Defendants.   Therefore, the undersigned recommends the Court again award only one-fifth of these costs.  Rather than $3,939.72 in costs, Plaintiff should be awarded $787.94, for which each Default Defendant is liable for one-sixth, or $131.32.

## V.   <u>RECOMMENDATION</u>

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned

RECOMMENDS the Court GRANT default judgment as to Default Defendants Aliyah Mullen, Ana Castillo, Monica G. Baez, A and J Graphics LLC, and Venny A. Dial for trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), dilution of Plaintiff's trademarks in violation of the Lanham Act, 15 U.S.C. § 1125(c) (Count III),

---

[21] This calculation includes:  (7 hours + 22.87 hours) * $400 = $11,948.00.

[22] Because the Default Defendants were misjoined in this suit, the undersigned finds it inappropriate to order joint and several liability.  To do so would prejudice the Default Defendants and serve as a potential improper windfall to Plaintiff.

unfair competition under Virginia common law, Va. Code Ann. § 59.1-92.15 (Count IV), and copyright infringement under 17 U.S.C. §§ 106 and 501 (Count V); and further

RECOMMENDS the Court DENY default judgment as to Defendants Michael Aaron Pritchard and Joi Lynn Pritchard, individually; and further

RECOMMENDS the Court award Plaintiff total statutory damages under the Lanham Act and Copyright Act as follows:

Aliyah Mullen:  $100,000;
Ana Castillo:  $100,000;
Monica G. Baez:  $75,000;
A and J Graphics, LLC:  $75,000;
Ewatkins67:  $100,000;
Venny A. Dial:  $75,000; and further

RECOMMENDS the Court grant Plaintiff permanent injunctive relief as set forth in the Court's August 17, 2022 temporary restraining order and *supra* at Section IV.B; and further

RECOMMENDS the Court award Plaintiff attorneys' fees of $2,041.33 and costs of $131.32 from each of the above-listed Default Defendants.

## VI.    NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to the Default Defendants by mail and email at the following addresses:

Aliyah Mullen
10 Sixthe Avenue
Bristol, GB BS7 0LT
arakhaimnovicshe@gmail.com

Ana Castillo
8000 N NOB HILL RD APT 203
TAMARAC FL 33321-7404
carolina.castillosegura@gmail.com

Monica G. Baez
Apt 102,1904 Willow Creek Dr
Austin, TX 78741

Michael Aaron Pritchard
Joi Lynn Pritchard
A and J Graphics LLC
3926 Wentworth Dr.
Arlington, Texas 76001

Ewatkins67
47 Mandan Road
Steelville, MO 65565

Venny A. Dial
706 E 52nd Street, Apt 1
Brooklyn, NY 11203

_William E. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

February 28, 2023
Alexandria, Virginia